Erin Bolan Hines (*Admitted Pro Hac Vice*)
Email: EBolanHines@cozen.com
Melissa Siebert (*Admitted Pro Hac Vice*)
Email: MSiebert@cozen.com
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: 312.474.4490
Facsimile: 312.300.5645

Brett Greving (SBN 270883)
COZEN O'CONNOR
101 Montgomery Street, Suite 1400
San Francisco, CA 94104
Telephone: 415.644.0914
Facsimile: 415.644.0978

Attorneys for Defendant
UKG, INC.

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AEGIS SENIOR COMMUNITIES LLC, | Case No.: 4:23-cv-01076 |
| Plaintiff, | Hon. Jon S. Tigar |
| vs. | **DEFENDANT UKG, INC.'s MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| UKG, INC., and DOES 1 through 20, inclusive | |
| Defendant. | |
| | Date: |
| | Time: |
| | Place: Oakland Courthouse, Courtroom 6 – 2nd Floor |
| | Complaint filed: 1/25/2023 |
| | Removal Date:  3/9/2023 |
| | [Filed concurrently with Notice of Motion and Motion; Request for Judicial Notice; and [Proposed] Order] |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................ 4

      A.   The Pled Facts Justify Dismissal ........................................................... 5

           1.   Clear Contract Terms Determine UKG's and Aegis' Obligations. ................. 5

           2.   Clear Contract Terms Limit Aegis' Damages ................................. 7

           3.   Clear Contract Terms Limit UKG's Indemnification Obligations .................. 9

           4.   Aegis' Wage and Hour Issues Are Unrelated To the KPC Outage ............... 10

III.  LEGAL STANDARD ...................................................................................... 12

IV.   ARGUMENT ................................................................................................. 13

      A.   Aegis Fails to State a Claim for Negligence or Gross Negligence ........................... 13

      B.   Aegis Cannot Maintain an Unfair Competition Law Claim ......................... 16

      C.   Aegis Fails to State a Claim for Equitable Indemnity ................................. 18

      D.   Aegis' Breach of Contract Claim Likewise Fails. ...................................... 20

      E.   Aegis' Good Faith and Fair Dealing Claims Must Be Dismissed ........................... 23

V.    CONCLUSION ............................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aadventure Products, Inc. v. Simply Smashing, Inc.*,
   2007 WL 2775128 (S.D. Cal. 2007) ......................................................................................18

*Aleo v. SLB Toys USA, Inc.*,
   466 Mass. 398 (Mass. 2013) ...............................................................................................16

*Anderson v. Fitness Internat., LLC*,
   4 Cal.App.5th 867 (Cal. Ct. App. 2016) ..............................................................................16

*Artukovich v. Pacific States Cast Iron Pipe Co.*,
   78 Cal.App.2d 1 (Cal. Ct. App. 1947) ..................................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................12

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
   501 U.S. 104 (1991) .............................................................................................................12

*Avidity Partners, LLC v. State of Cal.*,
   221 Cal. App. 4th 1180 (2013) ............................................................................................24

*Baggett v. Hewlett--Packard Co.*,
   No. No. SACV 07-0667, 2009 WL 3178066 (C.D. Cal. Sept. 29, 2009) ..............................14

*Basile v. LA Film School, LLC*,
   827 Fed.App'x 649 (9th Cir. 2020) ......................................................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................12

*Bevis v. Terrace View Partners, LP*,
   33 Cal.App.5th 230 (Cal. Ct. App. 2019) ............................................................................21

*Careau & Co. v. Security Pacific Business Credit, Inc.*
   222 Cal.App.3d 1371 (Cal. Ct. App. 1990) ......................................................................4, 24

*CareOne Mgmt., LLC v. Navisite, Inc.*,
   No. 1484CV00378BLS2, 2017 WL 2803060 (Mass. Super. Apr. 25, 2017) .......................23

*Castillo v. Seagate Technology, LLC*,
   No. 16-CV-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ................................14

*Catholic League for Religious and Civil Rights v. City and County of San Francisco*,
   464 F.Supp.2d 938 (N.D. Cal., Nov. 30, 2006) ..............................................................13, 23

*Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*,
   20 Cal.4th 163 (Cal. 1999) ..................................................................................................17

i

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*,
   No. 19-CV-05784-JST, 2020 WL 7392909 (N.D. Cal. July 23, 2020)...............................4, 21

*Citation Ins. Co. v. Gomez*,
   426 Mass. 379 (Mass. 1998) ..................................................................................................19

*City of Santa Barbara v. Super. Ct.*,
   41 Cal.4th 747 (Cal. 2007)....................................................................................................16

*Cont'l Ins. Co. v. Am. Prot. Indus.*,
   197 Cal.App.3d 322, 328-30 (Cal. Ct. App. 1987)................................................................15

*Cordoba v. Ricciardelli*,
   2003 WL 831760 (Mass. Super. Mar. 6, 2003) .....................................................................24

*Cortez v. Purolator Air Filtration Prod. Co.*,
   23 Cal.4th 163 (Cal. 2003).....................................................................................................17

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*,
   918 N.E.2d 36 (Mass. 2009) ..................................................................................................14

*Cusano v. Klein*,
   280 F.Supp.2d 1035 (C.D. Cal. 2003) ...................................................................................15

*Daniela Melgoza v. Aegis Senior Communities LLC d/b/a Aegis Living*,
   No. 5:22-cv-01756 ......................................................................................................2, 3, 10, 11

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
   No.: 3:16-cv-00014, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ...................................3, 14

*E.L. White, Inc. v. Huntington Beach*,
   21 Cal.3d 497 (Cal. 1978)......................................................................................................18

*Falk v. General Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ................................................................................18

*In re Finjan Holdings, Inc.*,
   58 F.4th 1048 (9th Cir. 2023) ................................................................................................22

*Frantz v. Blackwell*,
   189 Cal.App.3d 91 (Cal. Ct. App. 1987) ........................................................................12, 23

*George v. Automobile Club of Southern Cal.*,
   201 Cal.App.4th 1112 (Cal. Ct. App. 2011) .........................................................................12

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...............................................................................................12

*Goonewardene v. ADP, LLC*,
   6 Cal.5th 817.............................................................................................................3, 15, 16, 19

*Grappo v. McMills*,
   11 Cal.App.5th 996 (Cal. Ct. App. 2017) .............................................................................15

**DEFENDANT UKG, INC.'s MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
   896 F.2d 1542 (9th Cir. 1990) ...................................................................................12

*Hall v. Time Inc.*,
   158 Cal.App.4th 847 (Cal. Ct. App. 2008) ..............................................................16

*Huynh v. Quora, Inc.*,
   508 F. Supp. 3d 633 (N.D. Cal. 2020) ....................................................................17

*Jimenez v. 24 Hour Fitness USA, Inc.*,
   237 Cal.App.4th 546 (Cal. Ct. App. 2015) ..............................................................15

*Johnson v. JKLM Properties*,
   L.L.C., No. 5:20-CV-01078, 2020 WL 5517234 (N.D. Cal. Sept. 14, 2020) ........12

*KST Data, Inc. v. DXC Tech.*,
   No. CV 17-07927, 2018 WL 5733515 (C.D. Cal., Apr. 30, 2018) .........................19

*Levy v. State Farm Mut. Automobile Ins. Co.*,
   150 Cal.App.4th 1 (Cal. Ct. App. 2007) ..................................................................21

*Lewis v. YouTube, LLC*,
   244 Cal.App.4th 118 (Cal. Ct. App. 2015) ..............................................................19

*Mack v. S. Bay Beer Distributors, Inc.*,
   798 F.2d 1279 (9th Cir. 1986) .................................................................................12

*Markborough Cal., Inc. v. Super. Ct.*,
   227 Cal.App.3d 705 (Cal. Ct. App. 1991) ..............................................................20

*Maryland Cas. Co. v. Bailey & Sons, Inc.*,
   35 Cal.App.4th 856 (Cal. Ct. App. 1995) ...........................................................4, 18

*Mattei v. Corp. Mgmt. Sols., Inc.*,
   52 Cal. App. 5th 116 (Cal. Ct. App. 2020) .........................................................15, 16

*McCullom v. Former Presidential Donald Trump's Admin.*,
   No. 21-05738 BLF (PR), 2021 WL 5564801 (N.D. Cal. Nov. 29, 2021) ................4

*McGehee v. Coe Newnes/McGehee ULC*,
   No. C 03-5145, 2004 WL 2452855 (N.D. Cal. Feb. 10, 2004) ..............................14

*Moore v. Centrelake Med. Grp., Inc.*,
   83 Cal.App.5th 515 (Cal. Ct. App. 2022) ...........................................................13, 14

*Mullins v. Premier Nutrition Corp.*,
   No. 13-cv-01271-RS, 2018 WL 510139 (N.D. Cal. Jan. 23, 2018) .......................17

*Munning v. Gap, Inc.*,
   238 F. Supp. 3d 1195 (N.D. Cal. 2017) ..................................................................17

*New England Country Foods, LLC v. Vanlaw Food Prod., Inc.*,
   No. SACV2101060, 2022 WL 266050 (C.D. Cal. Jan. 20, 2022).........................23

**DEFENDANT UKG, INC.'s MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

*NuCal Foods, Inc. v. Quality Egg LLC*,
    918 F.Supp.2d 1023 (E.D. Cal. 2013)......................................................................14

*Pacific Shores Hosp. v. EMCOR Group Inc.*,
    No. CV 10-07480, 2011 WL 13217541 (E.D. Cal. Feb. 4, 2011) ...........................12

*Parker v. Bank of Am., NA*,
    No. CIV.A. 11-1838, 2011 WL 6413615 (Mass. Super. Dec. 16, 2011) ................21

*Pink Dot, Inc. v. Teleport Commc'ns Grp.*,
    89 Cal. App. 4th 407 (2001) .................................................................................23

*Pirani v. Slack Techs., Inc.*,
    13 F.4th 940 (9th Cir. 2021) .................................................................................14

*Prager University v. Google LLC*,
    85 Cal.App.6th 1022, 1039 (Cal. Ct. App. 2022) ...................................................24

*Rosencrans v. Dover Images, Ltd.*,
    192 Cal.App.4th 1072 (Cal. Ct. App. 2011) ...........................................................15

*Rossmoor Sanitation, Inc. v. Pylon, Inc.*
    13 Cal.3d 622 (Cal. 1975)................................................................................4, 18

*RRX Indus., Inc. v. Lab-Con, Inc.*,
    772 F.2d 543 (9th Cir. 1985) .................................................................................20

*Salazar v. McDonald's Corp.*,
    944 F.3d 1024 (9th Cir. 2019) ...............................................................................15

*Salonga v. Aegis Senior Communities, LLC*,
    Alameda Superior Court, No. 21CV003128 (Nov. 24, 2021) ......................3, 10, 11

*SC Licensing, LLC v. 5 Horizons Grp., LLC*,
    No. CV 17-7542, 2018 WL 5099293 (C.D. Cal. 2018)......................................4, 17

*Scalia v. Employer Solutions Staffing Group, LLC*,
    951 F.3d 1097 (9th Cir. Mar. 2, 2020)...................................................................19

*Shroyer v. New Cingular Wireless Services, Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ...........................................................................4, 18

*Sisemore v. Master Financial, Inc.*,
    151 Cal. App. 4th 1386 (Cal. Ct. App. 2007) .........................................................18

*Somerset Sav. Bank v. Chicago Title Ins. Co.*,
    420 Mass. 422 (Mass. Super. 1995).......................................................................21

*Speers v. H.P. Hood, Inc.*,
    22 Mass.App.Ct. 598 (Mass. App. Ct. 1986).........................................................18

*In re TJX Companies Retail Sec. Breach Litig.*,
    564 F.3d 489 (1st Cir. 2009).................................................................................14

*In re Tobacco II Cases*,
    46 Cal.4th 298 (Cal. Ct. App. 2009) ........................................................................16

*Vacca v. Brigham & Women's Hosp., Inc.*,
    98 Mass.App.Ct. 463 (Mass. App. Ct. 2020) ...........................................................21

*Van Buskirk v. Cable News Network, Inc.*,
    284 F.3d 977 (9th Cir. 2002*)* .................................................................................12

*Van Hook v. Curry*,
    No. C 06-3148, 2009 WL 773361 (N.D. Cal. Mar. 23, 2009)................................22

*Vasilenko v. Grace Family Church*,
    3 Cal.5th 1077 (Cal. 2017)......................................................................................13

*Weiler v. PortfolioScope, Inc.*,
    469 Mass. 75 (Mass. 2014) ....................................................................................24

*Zapata Fonseca v. Goya Foods Inc.*,
    No. 16-cv-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ..................17

**Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq.* ...............................................................16, 18

Cal. Bus. & Prof. Code, § 17204 ...............................................................................16

Cal. Lab. Code § 2810.3 .............................................................................................19

**DEFENDANT UKG, INC.'s MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

1    TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE THAT on July 6, 2023 at 2:00 p.m., or as soon thereafter at the

3    matter may be heard by the above-entitled Court, located at the Oakland Courthouse, 1301 Clay Street,

4    Oakland, CA 94612 in Courtroom 6, 2nd Floor, Defendant UKG, Inc. ("UKG"), will and hereby does

5    move the Court for an Order dismissing Plaintiff Aegis Senior Communities LLC's ("Aegis")

6    Complaint pursuant to F.R.C.P Rule 12(b)(6).

7    UKG seeks an order dismissing Aegis' Complaint without leave to amend, on the grounds that

8    Aegis' Complaint does not state a cause of action against UKG.

9    **I.**    **INTRODUCTION**

10    Plaintiff Aegis Senior Communities LLC ("Aegis") operates assisted living facilities in

11    California, Nevada, and Washington. (Compl. ¶¶ 6-7.) Defendant UKG, Inc. ("UKG"), through its

12    subsidiary, Kronos Incorporated ("Kronos")[1], provides human capital and workforce management

13    solutions for companies such as Aegis. (*Id*. ¶ 19.) These solutions include timekeeping and payroll

14    software applications that organizations use to organize and run their payroll. (*Id*. ¶ 20.) In July 2019,

15    Aegis entered into a contract with Kronos to purchase Workforce Central Software, hosted in the

16    Kronos Private Cloud, to help it administer and manage its employees' timekeeping and payroll. (*Id*.

17    ¶¶ 26, 55; Compl. Ex. A.). As explained more fully below, the terms of the contract, which is titled

18    "Workforce Central – Software as a Service Terms and Conditions" and its incorporated attachments

19    (collectively "the WFC Agreement") render Aegis' claims legally untenable. *See infra*, pp. 18-23.

20    Unfortunately, in December 2021, the Kronos Private Cloud ("KPC") was the target of a

21    criminal ransomware attack, which caused a temporary outage in KPC services. (*Id*. ¶¶ 3, 27.) Kronos

22    quickly notified its KPC customers (including Aegis) and began extensive efforts to restore customer

23    access to the KPC, communicating updates to its customers throughout the process. (*Id*. ¶¶ 27-9.)

24    Although Aegis' lawsuit attempts to exaggerate the ultimate impact of the attack, as well as UKG's

25    ability to foresee the attack and prevent it, only two Kronos customers (not Aegis) experienced any

26    limited data exfiltration issues, and customer access to the KPC was widely restored by mid-January

27

28    [1] Like in Aegis' Complaint, Defendant UKG is referred to by Kronos and UKG interchangeably.

**DEFENDANT UKG, INC.'s MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

2022. (*Id.* ¶¶ 28, 33.) Aegis states, consistent with the KPC restoration date, that it was able to provide "access to some of the payroll software" to its employees by January 19, 2022. (*Id.* ¶ 28.)

During the KPC outage, Aegis and other KPC customers used alternative methods, such as "handwritten timecards," or had back up plans to allow for recording employee time worked. (*Id.* ¶ 34.) Although Aegis claims it "attempted" to have employees engage in the simple task of "accurately record[ing] their hours manually" (*Id.* ¶ 68) during the outage, it further notes that Aegis' decisions to "maintain a leanly staffed payroll department" and "fundamentally rely on UKG" prevented it from "accurately record[ing] the hours of its employees" (*Id.* ¶ 72). And, Aegis admits that it did "not accurately keep and manage time worked for employees" resulting in "some employees receiv[ing] inaccurate pay." (*Id.* ¶ 74.)

In March 2022, well after the time that UKG had restored full access to the KPC, a California-based former Aegis employee sued Aegis on a class and collective action basis, alleging that Aegis did not pay her and her co-workers their agreed upon wages or even the legally-required required minimum wage, and did not allow them to take California-required breaks and meal periods. (Compl. Ex. B, *Daniela Melgoza v. Aegis Senior Communities LLC d/b/a Aegis Living*, No. 5:22-cv-01756) (the "*Melgoza* lawsuit"). **Most relevant here, the *Melgoza* lawsuit alleged that Aegis was attempting to blame its "severe underpayments" to its employees, which stretched back 3-4 years, on the UKG ransomware attack**. (Compl. Ex. B, ¶ 24.) The *Melgoza* lawsuit allegations proved prescient, as Aegis then sued UKG here, attempting to use the KPC ransomware attack as a strawman for its own wage and hour violations.

Aegis' lawsuit against UKG weaves a convoluted tale of supposition and recrimination about what UKG should have done to prevent the December 2021 criminal ransomware attack, because such attacks are "prevalent" nowadays, while at the same time citing the extensive efforts UKG takes to protect customer data (Compl. ¶¶ 24-25), and ignoring that the Parties' contract specifically defines the data security measures agreed upon by the parties. (Compl. Ex. A, § 12 "Data Security," p. 9.) Aegis further claims that UKG's website lulled Aegis into believing that no service outages would ever occur, and justified Aegis's decision not to have sufficient staff or a contingency plan in place to properly pay its employees in the event of a service outage. (Compl. ¶¶ 72-4.) But, the website

provisions cited state no such thing, and the WFC Agreement not only envisions service outages, it agrees to provide specific credits as *the* remedy for them. (Compl. Ex. A, "Service Level Agreement," p. 13).

Most incredibly, the Complaint contends that the *Melgoza* lawsuit is the direct result of the KPC ransomware attack service outage, because prior to the attack "[Aegis] paid its employees consistently and accurately, and provided breaks in accordance with state and federal laws." (Compl. ¶ 71). Not so. Aegis was sued for nearly identical minimum wage and meal and rest period violations in a class action filed in November 2021, for conduct stretching back to 2017, well prior to the outage Aegis is now blaming UKG for these same wage and hour violations. *See*, *Salonga v. Aegis Senior Communities, LLC*, Alameda Superior Court, No. 21CV003128 (Nov. 24, 2021) (the "*Salonga* lawsuit."). As explained more fully below, the *Melgoza* lawsuit has since been consolidated with the first-filed *Salonga* lawsuit, so that the claims against Aegis are identical. *See infra*, pp. 10-11. Aegis' Complaint against UKG is a work of fiction, not fact. Aegis has woven a tall tale, which is not supported by the factual allegations in the Complaint, the WFC Agreement, the *Melgoza* and *Solanga* lawsuits, or the law.

The Complaint attempts to bring claims against UKG for negligence (Count I); gross negligence (Count II); unfair competition (Count III); equitable indemnity (Count IV); breach of contract (Count V); and breach of covenant of good faith and fair dealing (Count VI). None of these claims are sustainable. First, Aegis' negligence and gross negligence claims (Counts I and II) are premised on the mistaken proposition that UKG owed Aegis a duty to prevent a criminal ransomware attack, and a duty to ensure that Aegis paid its employees minimum wages and provided breaks in accordance with state and federal wage and hour laws. UKG does not owe any such legal or contractual duties to Aegis. *See Goonewardene v. ADP, LLC*, 6 Cal.5th 817, 841 ("[I]t is not appropriate to impose upon a payroll company a tort duty of care to an employee with respect to the obligations imposed by the applicable labor statutes and wage orders."). Moreover, Counts I and II are barred by the economic loss doctrine, which precludes recovery of purely economic losses in tort. *See, e.g., Dugas v. Starwood Hotels & Resorts Worldwide, Inc.,* No.: 3:16-cv-00014, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016).

Aegis' remaining claims (Counts III-VI), purport to flow from the WFC Agreement, which is attached to the Complaint as Exhibit A. Counts III-VI are wholly unsupported by the contract's terms and applicable case law. Taking each in turn, an action for unfair competition (Count III) cannot be predicated on a breach of contract. *See SC Licensing, LLC v. 5 Horizons Grp., LLC*, No. CV 17-7542, 2018 WL 5099293, at *4 (C.D. Cal. 2018); *and see*, *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). Aegis' equitable indemnity claim (Count IV) is meritless because the Parties' contract expressly limits Aegis' indemnification duties to intellectual property claims, which are not at issue here. *See Maryland Cas. Co. v. Bailey & Sons, Inc.*, 35 Cal.App.4th 856, 873 (Cal. Ct. App. 1995) (quoting *Rossmoor Sanitation, Inc. v. Pylon, Inc.* 13 Cal.3d 622, 628 (Cal. 1975). Similarly, Aegis' breach of contract (Count V) claim is not tenable because it is not premised on the actual terms of the parties' contract, which do not include the data security procedures Aegis believes (upon information and belief) that UKG should have implemented. The breach of implied covenant of good faith and fair dealing claim (Count VI), which is predicated entirely on the contract claim, is superfluous as a matter of law, and thus cannot be maintained. *Careau & Co. v. Security Pacific Business Credit, Inc.* 222 Cal.App.3d 1371, 1395 (Cal. Ct. App. 1990).

For these and other reasons set forth more fully herein, Aegis lacks viable claims against UKG. The Complaint should be dismissed in its entirety with prejudice and without leave to amend.

## II.    FACTUAL BACKGROUND

The Complaint is rife with assertions based on information and belief (Compl. ¶¶ 10, 18, 36, 37, 40, 43, 44), references to other, unrelated ransomware incidents that bear no relation to Aegis' Complaint, claims or the contract between the two Parties (Compl. ¶¶ 36-37, 46-52), and statements regarding other, non-party UKG customers, and what they may have done or experienced related to the ransomware attack and resulting KPC outage. (Compl. ¶¶ 33-35.) None of these assertions meet federal court pleadings standards, do not constitute allegations necessary to sustain the claims in the Complaint, and should be disregarded. *See Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2020 WL 7392909, at *5 (N.D. Cal. July 23, 2020) (allegations based on "information and belief" do not satisfy pleading standards); *McCullom v. Former Presidential Donald Trump's Admin.*, No. 21-05738 BLF (PR), 2021 WL 5564801, at *2 (N.D. Cal.

Nov. 29, 2021) ("*where the allegations in a complaint are* argumentative, prolix, replete with redundancy *and largely irrelevant*, the complaint is properly dismissed for failure to comply with Rule 8(a).") (internal quotation omitted).

### A.     The Pled Facts Justify Dismissal

Putting aside these irrelevant assertions, there are undisputed facts evident from the Complaint and its incorporated attachments, as well as from public records of which the Court may take judicial notice, which justify dismissal of the claims. (RJN, Greving Decl. , Exs. A-F). As examples, the Parties do not dispute that Aegis and Kronos, a UKG subsidiary, entered into the WFC Agreement on July 26, 2019, which is attached to the Complaint as Ex. A, affixed with a "Statement of Work" that Aegis also signed. (Compl. ¶¶ 26, 53, Ex. A). The Parties agree that pursuant to Exhibit A, Kronos agreed to provide Aegis with Kronos Workforce Central SaaS (Software as a Service) Applications (collectively, "Workforce Central"), a cloud based workforce management software, which included functionality for timekeeping and payroll, subject to the terms of the contract. (Compl. Ex. A). All agree that in December 2021, over two years into the WFC Agreement, some of the Kronos workforce management solutions hosted in the Kronos Private Cloud ("KPC") were the target of a criminal ransomware attack, which caused a temporary outage in KPC services. (Compl. ¶¶ 3, 27.) Aegis was part of the temporary outage. (Compl. ¶ 64.) Kronos took immediate steps to ensure that Aegis (and its employees) were able to access KPC services beginning in mid-January 2022, when the outage was resolved. (*Id*. ¶¶ 28-9, 33.) However, Aegis admits that although its pay structure was complex and it was required to comply with state-regulated break laws (*Id*. ¶¶ 70, 72), it had maintained "lean" staffing to handle its payroll responsibilities, and no infrastructure in the form of its own continuity plan or other back-up plan to accurately pay some of its employees during the KPC service outage. (*Id*. ¶¶ 72-74.)

However, Aegis largely ignores a slew of undisputable facts that doom its claims, which are readily apparent from the Complaint and incorporated attachments.

### 1.     Clear Contract Terms Determine UKG's and Aegis' Obligations.

Aegis' Complaint makes much ado regarding the UKG website, and its purported description of Workforce Central Software features, taking marketing and admitted "advertising" out of context

and deeming these statements "promises by UKG." (Compl. ¶¶ 54-57.) The only commitments made by UKG to Aegis are included in the WFC Agreement, whose clear and unambiguous terms both set forth and limit Kronos' obligations to Aegis, and preclude these lawsuit claims. Relevant here:

- Section 17.9 of the WFC Agreement provides that it supersedes any prior or contemporaneous representations or communications, and constitutes the entire agreement between the parties. (Compl., Ex. A, § 17.9, "GENERAL", at 12). Marketing and website materials are thus expressly excluded from the parties' contract, limiting Aegis to the representations in the contract, which do not contain the statements alleged in the Complaint.

- Section 12 of the WFC Agreement requires Kronos to "provide administrative, physical, and technical safeguards to protect [Aegis'] data," which are more fully described on Kronos' cloud guidelines webpage (Compl., Ex. A, § 12.1 , "DATA SECURITY", at 9.) There are no extraneous third-party guidelines or suggested practices regarding cybersecurity, or any other extra-contractual data security standards, such as those asserted in Aegis' Complaint. (Compl. ¶¶ 36-43.)

- Nowhere does Kronos assume responsibility to satisfy Aegis' payroll and timekeeping obligations to its employees. The WFC Agreement simply grants Aegis limited rights of use to the stated services and applications via licenses and payments. (Compl., Ex. A, § 4.1, "RIGHT TO USE", at 3.)

- **Under the WFC Agreement, Aegis remains responsible for compliance with state and federal wage and hour laws**. As the WFC Agreement notes, Aegis remains "responsible for ensuring that [it] complies with applicable laws and regulations," and represented that it was not relying upon Kronos "for any advice or guidance regarding compliance with federal and state laws." (Compl., Ex. A, § 4.5, RIGHT TO USE", at 4.)

Perhaps most importantly, the WFC Agreement does not guarantee that a ransomware attack or other service interruption will never occur. Rather, the WFC Agreement expressly contemplates service outages of the type described in Aegis' Complaint, noting in all capital letters: "THE [KRONOS] SERVICES ARE NOT GUARANTEED TO BE ERROR-FREE OR UNINTERRUPTED." (Compl., Ex. A, § 11.3, "LIMITED WARRANTY; DISCLAIMERS OF

WARRANTY", at 9.) And, Exhibit A to the WFC Agreement addresses service outages and provides Aegis with a rebate (credits) when *any* such outages occur. (Compl., Ex. A, "Service Level Agreement," at 13-14.)

### 2.    Clear Contract Terms Limit Aegis' Damages

Aegis' entire lawsuit is premised on its claim that the KPC outage entitles it to a laundry list of damages and costs, including consulting fees; overtime for employees tasked with manually recording working hours and breaks; overpayments to employees; defending "labor claims" caused by Aegis inaccurate or untimely payments; check shipping costs; amended W-2 costs; compensatory, punitive, and nominal damages; treble damages; and attorneys' fees, costs and expenses. (Compl. ¶¶ 77, 93, 99, 102, 110, 115, Prayer for Relief). These damages claims ignore the hard fact that under the WFC Agreement, there is only one remedy Aegis is entitled to in the event of a Kronos Service Outage,[2] namely the discrete remedy set forth in the Service Level Agreement attached to the WFC Agreement and incorporated by reference therein:

Per Section 10 of the WFC Agreement (Compl., Ex. A, § 10, "SERVICE LEVEL AGREEMENT, at 8 [emphasis in the original]):

> ***CUSTOMER'S SOLE AND EXCLUSIVE REMEDY IN THE EVENT OF ANY SERVICE OUTAGE OR INTERRUPTION OF THE SERVICES OR FAILURE BY KRONOS TO MEET THE TERMS OF THE APPLICABLE SERVICE LEVEL AGREEMENT SHALL BE THE REMEDIES PROVIDED IN EXHIBIT A.***

In turn, the Service Level Agreement states that, in the event of a Kronos Service Outage, Aegis is solely entitled to a "Service Level Credit" to be applied to its invoice for the month of any outage. (Compl., Ex. A, "Service Level Agreement", at 13.) Aegis is not claiming that UKG denied its service level credits. Aegis' Complaint conveniently omits that, in early 2022, UKG issued Service Level Credits to Aegis pursuant to the WFC Agreement in response to the subject service outage.

For the avoidance of doubt, the Parties also agreed that Service Level Credits were the sole and exclusive remedy for *any* Service Outage, regardless of the cause thereof. Indeed, Section 14.1 of

---

[2] "Outage" is defined to mean the accumulated time during which Aegis is unable to access Workforce Central for reasons other than an Excluded Event. (Compl., Ex. A, "Service Level Agreement" at 13.)

the WFC Agreement discussing "Limitation of Liability" unequivocally shuts the door on any other

remedy for an outage by stating:

> EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, KRONOS AND ITS SUPPLIERS WILL NOT BE LIABLE FOR ANY DAMAGES OR INJURIES CAUSED BY THE USE OF THE SERVICES OR *BY ANY ERRORS, DELAYS, INTERRUPTIONS IN TRANSMISSION, OR FAILURES OF THE SERVICES*."

The WFC Agreement's "Limitation of Liability" section constitutes the proverbial "nail in the

coffin" vis-à-vis Aegis' damages claims, as it clearly bars recovery of all of Aegis' claimed damages.

Sections 14.2 and 14.3 of the WFC Agreement, which are reprinted below for the Court's convenience,

limit Kronos' liability under the WFC Agreement to direct damages of a maximum of the total net

payments received by UKG for the services in the twelve (12) month period immediately preceding

the date on which such claim arises. It states:

> THE TOTAL AGGREGRATE LIABLITY OF KRONOS OR KRONOS' SUPPLIERS TO [AEGIS] AND/OR ANY THIRD PARTY IN CONNECTION WITH THE AGREEMENT SHALL BE LIMITED TO DIRECT DAMAGES PROVEN BY [AEGIS], SUCH DIRECT DAMAGES NOT TO EXCEED AN AMOUNT EQUAL TO THE TOTAL NET PAYMENTS RECEIVED BY KRONOS FOR THE SERVICES IN THE TWELVE (12) MONTH PERIOD IMMEDIATELY PROCEEDING THE DATE IN WHICH SUCH CLAIM ARISES.

(Compl., Ex. A, § 14.2, "LIMITATION OF LIABILITY", at 10.)

> [EXCEPT FOR SECTION 13 INDEMNIFICATION, IN NO EVENT SHALL KRONOS. . .BE LIABLE TO CUSTOMER OR ANY THIRD PARTY FOR ANY INCIDENTAL, SPECIAL, CONSEQUENTIAL OR OTHER INDIRECT DAMAGES OR FOR ANY. . .LOST DATA OR COST OF PROCUREMENT OF SUBSTITUTE SERVICES RESULTING FROM DELAYS. . .OR SERVICES INTERRUPTION, HOWEVER CAUSED. . .REGARDLESS OF THE LEGAL THEORY UNDER WHICH SUCH LIABILITY IS ASSERTED. . .

(Compl., Ex. A, § 14.3, "LIMITATION OF LIABILITY", at 10.)

In addition to the preclusive effect of the above provisions, Section 14.4 specifically disclaims

any liability, including liability for any data security breach, resulting from any externally introduced

harmful program (*i.e.*, a criminal ransomware event like the one UKG suffered in December 2021).

(*See* Compl., Ex. A, § 14.4, "LIMITATION OF LIABILITY", at 11.)

### 3.      Clear Contract Terms Limit UKG's Indemnification Obligations

Count III of Aegis' Complaint seeks indemnity for any recovery by Aegis' employees in the *Malgoza* wage and hour lawsuit against Aegis. (Compl. ¶¶ 94-99.) However, Section 13.1 of the WFC Agreement contains an express indemnification provision (the "Indemnity Provision"), which narrowly limits UKG's indemnification obligations, and states with emphasis:

> 13.1 Kronos shall defend [Aegis] and its respective directors, officers and employees (collectively, the "Customer Indemnified Parties") from and against any and all notices, charges, claims, proceedings, actions, causes of action and suits **brought by a third party (each a "Claim") alleging that the permitted uses of the Services infringe or misappropriate any United States or Canadian copyright or patent**, and Kronos will indemnify and hold harmless the Customer Indemnified Parties against any liabilities, obligations, costs or expenses (including without limitation reasonable attorneys fees) actually awarded to a third party **as a result of such Claim** by a court of applicable jurisdiction or as a result of Kronos' settlement of such a Claim…

That is the only indemnification that the parties agreed to under the WFC Agreement. (*See generally*, Compl, Ex. A.) The limited nature of UKG's indemnity obligation to Aegis is buttressed by the WFC Agreement's integration clause, under which the Parties agreed that "[t]h[e] [WFC] Agreement and information expressly incorporated by reference [t]herein, together with the applicable Order Form, constitute the entire agreement between the [P]arties for the Services described [t]herein and supersede all prior or contemporaneous representations, negotiations, or other communications between the [P]arties relating to the subject matter of th[e] [WFC] Agreement." (Compl., Ex. A, § 17.9, "GENERAL", at 12.) Thus, as revealed by the plain and express terms of the WFC Agreement, UKG's indemnity obligation *can only be triggered* in the event Aegis faces third-party intellectual property infringement claims. Yet, Aegis does not contend that it is facing any such claims and there is no mention in the Indemnity Provision or elsewhere in the WFC Agreement that UKG is obligated to indemnify Aegis for potential losses incurred in connection with wage and hour claims, like the *Malgoza* Litigation. Wage and hour claims were properly left out of the UKG indemnification provision for the widely understood reason that ultimate responsibility for the payment of employee wages at all times remains the customer's singular responsibility as the employer.

4.     **Aegis' Wage and Hour Issues Are Unrelated To the KPC Outage**

In seeking to hold UKG responsible for its own wage and hour violations, Aegis casts itself alternately as a sophisticated employer of thousands of employees (including California residents), subject to labor laws, union rules, and Aegis-specific policies of great import and complexity (Compl. ¶¶ 8-9, 58, 70), and as innocent victim of the ransomware attack, contending that "[p]rior to UKG's data breach [it] paid its employees consistently and accurately, and provided breaks in accordance with state and federal laws." (Compl. ¶ 71). However, Aegis' history of being on the receiving end of multiple wage and hour class actions, including the previously-described *Salonga* and *Malgoza* lawsuits, underscores the fact that Aegis' wage and hour violations long preceded the UKG ransomware attack, and date as far back as 2017, two years before Kronos and Aegis entered into the WFC Agreement.

In what can only be described as a calculated move, Aegis fails to advise the Court, or include in its Complaint, the fact that prior to the UKG ransomware incident, it was sued for wage and hour violations on November 24, 2021, by Andrea Solanga, a California-based Aegis employee, who asserted nearly identical minimum wage and meal/rest break violations dating back to 2017. *See Salonga v. Aegis Senior Communities, LLC*, Alameda Super. Ct., No. 21CV003128. (RJN, Greving Decl. , Ex. A, *Salonga* lawsuit).

Aegis instead chooses to blame UKG for the *Melgoza* lawsuit, which is a near copy-cat version of the *Salonga* lawsuit, because the *Melgoza* lawsuit, and its related Private Attorney General ("PAGA") Action, happened to be filed after the UKG ransomware attack, on March 18, 2022 and May 5, 2022, respectively (hereafter the "*Melgoza* Litigation"). (Compl. ¶¶ 75-76, Ex. B.) And the *Melgoza* Litigation, Aegis claims, was directly caused by the KPC outage. (*Id*. ¶ 76.)

In this instance, timing is not everything. The *Melgoza* plaintiff asserts that she is similarly situated to hundreds of Aegis employees, who since March 2018 were not paid even minimum wage for hours worked, and were not provided with proper rest and meal periods. (Compl., Ex. B, ¶¶ 37, 41 ("Aegis has employed hundreds of people similarly situated to [Melgoza] during the four-year period prior to the filing of this Complaint").) In other words, the *Melgoza* Litigation seeks redress on behalf of Aegis' aggrieved employees dating as far back as March 2018, several years prior to the December

1    2021 ransomware attack and resulting KPC outage, and before the time of the WFC Agreement

2    between the Parties. This irony was not lost on Plaintiff Melgoza, whose lawsuit contends as follows:

3              Upon [Melgoza] and putative Class and Collective members'
               complaints to [Aegis] regarding the severe underpayments, [Aegis]
4              blamed the underpayments on a breach in the Kronos payroll system
               that [Aegis] used to record hours and wages. Despite it being [Aegis']
5              responsibility, not the responsibility of Kronos, to make sure [Melgoza]
               and putative Class and Collective members are properly compensated,
6              [Aegis] has failed to timely and accurately issue [Melgoza] and putative
               Class and Collective members the correct payment for the hours of work
7              that they have labored for the benefit of [Aegis].

8    (Compl. Ex. B, ¶ 24.)

9            On April 18, 2022, **Aegis** moved to have the *Salonga* Litigation and *Melgoza* lawsuit deemed

10   related, thus conceding that the two cases overlapped. (RJN, Greving Dec., Ex. C.) Aegis' motion was

11   granted on May 9, 2022 and the cases were deemed related. (RJN, Greving Dec., Ex. D.) Then, on

12   May 26, 2022, **at Aegis' request**, the *Salonga* case and *Melgoza* case were consolidated under Federal

13   Rule of Civil Procedure 42(a), with *Salonga* as the lead case. (RJN, Greving Dec., Ex. E.) Thereafter,

14   on June 23, 2022, Plaintiffs Melgoza and Salonga filed a Consolidated Class Action Complaint (the

15   "Consolidated Class Action Complaint") against Aegis. (RJN, Greving Dec., Ex. F.) The Consolidated

16   Class Action Complaint leaves no doubt that Aegis' alleged wage and hour violations began long ago

17   and clearly precede the effects of the December 2021 ransomware attack. (*Id.*) Indeed, the

18   Consolidated Class Action Complaint is brought on behalf of "[a]ll California residents currently or

19   formerly employed by [Aegis] as non-exempt employees in the State of California *at any time between*

20   *May 30, 2017 until resolution of this action*…." (*Id.* at 3.)

21           In sum, Aegis' contention that UKG's purported omissions and failure to prevent the

22   December 2021 ransomware attack caused the *Melgoza* Litigation is belied by the inescapable reality

23   that Aegis was already confronting nearly indistinguishable wage-and-hour claims, dating well prior

24   to the December 2021 attack. Aegis cannot claim that the KPC outage caused its wage and hour

25   violations when it was accused of the same violations for years before the outage occurred. Even if

26   Aegis were not already enmeshed in these wage and hour disputes prior to the outage, Aegis is simply

27   without grounds to shift its employer obligations to comply with federal and state law over to UKG.

28

**DEFENDANT UKG, INC.'s MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

1  **III.    LEGAL STANDARD**

2         "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

3  as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the court must deem all

5  allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor, "pleadings

6  that contain no more than conclusions are not entitled to the assumption of truth." *Basile v. LA Film*

7  *School, LLC*, 827 Fed.App'x 649, 652 (9th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 679). "Formulaic

8  recitation of the elements of a cause of action will not do … Factual allegations must be enough to

9  'raise a right to relief above the speculative level.'" *Pacific Shores Hosp. v. EMCOR Group Inc.*, No.

10  CV 10-07480, 2011 WL 13217541, at *1 (E.D. Cal. Feb. 4, 2011) (quoting *Twombly*, 550 U.S. at 555).

11  In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and

12  material that is properly submitted with the complaint (here, the exhibits attached to Aegis'

13  Complaint). *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002*); Hal Roach*

14  *Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1990).

15         However, a Court need not "accept as true allegations that contradict matters properly subject

16  to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or

17  unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal

18  quotation marks and citations omitted); *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282

19  (9th Cir. 1986) (affirming the district court taking judicial notice of administrative agency records to

20  adjudicate a motion to dismiss), *abrogated on other grounds, Astoria Fed. Sav. & Loan Ass'n v.*

21  *Solimino*, 501 U.S. 104 (1991); *see also Johnson v. JKLM Properties*, L.L.C., No. 5:20-CV-01078,

22  2020 WL 5517234, at *2 (N.D. Cal. Sept. 14, 2020) (to adjudicate a motion to dismiss, the court took

23  judicial notice of public records and geographical information beyond dispute).

24         Similarly, the Court may consider evidentiary information in matters attached to the complaint

25  which contradict the allegations of the complaint. *George v. Automobile Club of Southern Cal.*, 201

26  Cal.App.4th 1112, 1130 (Cal. Ct. App. 2011) ("trial court was not required to credit plaintiff's

27  allegations that extrinsic evidence 'renders the insurance contract at issue here ambiguous'" where

28  language of policy attached to complaint showed otherwise); *Frantz v. Blackwell*, 189 Cal.App.3d 91,

94 (Cal. Ct. App. 1987) ("evidentiary facts found in recitals of exhibits attached to a complaint or superseded complaint…can be considered on demurrer"); *Catholic League for Religious and Civil Rights v. City and County of San Francisco*, 464 F.Supp.2d 938, 941 (N.D. Cal., Nov. 30, 2006) ("Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion").

## IV.   ARGUMENT

Combining the pled facts and the law, it is clear that Aegis' claims cannot survive a Rule 12(b)(6) motion to dismiss, and that repleading would be futile.

### A.   Aegis Fails to State a Claim for Negligence or Gross Negligence

In order to maintain its claim for negligence (Count I), Aegis must allege a cognizable duty owed to it, a breach of that duty by UKG, and that the breach directly caused Aegis injury. *Vasilenko v. Grace Family Church*, 3 Cal.5th 1077, 1083 (Cal. 2017). As a threshold issue, Aegis cannot maintain its negligence claim, because it cannot establish that UKG owed it a cognizable duty. Aegis bases its negligence claim upon the assertion that UKG owed Aegis a duty to protect its employees' personally identifiable information. (Compl. ¶ 79.) However, under California law, a duty to protect PII only exists, if at all, as to the individual whose PII is implicated – that duty does not extend to third parties such as Aegis. *See Moore v. Centrelake Med. Grp., Inc.*, 83 Cal.App.5th 515, 535 (Cal. Ct. App. 2022) (appellant failed to cite an authority creating an independent duty to prevent disclosure of PII). As such, UKG cannot have breached a duty that it does not owe to Aegis as a matter of law. Count I also fails to allege any cognizable injury caused to Aegis by the purported "exposure" of its employees' PII (Compl. ¶ 82.)[3]  Rather, Aegis contends throughout the Complaint that it was harmed by the KPC outage and its own failure to adequately staff and have procedures in place in the event of a service outage, but fails to allege harm related to exposure of an individual's PII, such as credit monitoring. (Compl. ¶¶ 71-74, 77). Aegis merely parrots allegations that purported exposure of its

[3] Notably, Aegis' claimed injuries for consulting fees, overtime for employees tasked with manually recording working hours and breaks, overpayments to employees; defending "labor claims" caused by Aegis inaccurate or untimely payments, check shipping costs, amended W-2 costs, compensatory, punitive, and nominal damages; treble damages, and attorneys' fees, costs and expenses have nothing to do with exposure of an individual's PII. (Compl. ¶¶ 77, 93, 99, 102, 110, 115, Prayer for Relief).

**DEFENDANT UKG, INC.'s MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

employees' PII caused Aegis "injury." Again, any potential harm is related to its employees, not to Aegis, and simply stating the elements of negligence, without factual allegations, is insufficient to state a claim. *Pirani v. Slack Techs., Inc.*, 13 F.4th 940, 946 (9th Cir. 2021) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal quotation omitted).

Even assuming Aegis can state a claim for negligence, any recovery is barred by California's economic loss doctrine, which provides that "purely economic losses are not recoverable in tort." *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F.Supp.2d 1023, 1028 (E.D. Cal. 2013) (citation omitted).[4] The economic loss doctrine has been deemed to preclude economic damages associated with allegedly compromised PII, such as the costs associated with identity theft prevention, time spent, and loss of productivity. *See, e.g., Dugas v. Starwood Hotels & Resorts Worldwide, Inc.,* No. 3:16-cv-00014, 2016 WL 6523428, at *12 (S.D. Cal. Nov. 3, 2016); *Castillo v. Seagate Technology, LLC*, No. 16-CV-01958-RS, 2016 WL 9280242 at *5-6 (N.D. Cal. Sept. 14, 2016) (same); *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 536 (Cal. Ct. App. 2022). Applying the analysis here leads to the inevitable conclusion that Aegis is at least equally barred from seeking third-party economic damages related to its employees' "exposed" PII. Even giving Aegis the benefit of consideration of its incorporated allegations (Compl. ¶ 79), at most, Aegis is alleging a breach of UKG's contractual duties, even though no such breach or duty exists. *See infra*, p. 15. Regardless, the economic loss doctrine also precludes claims that are premised on contractual duties. *See McGehee v. Coe Newnes/McGehee ULC*, No. C 03-5145, 2004 WL 2452855, at *3 (N.D. Cal. Feb. 10, 2004); *Baggett v. Hewlett--Packard Co.*, No. No. SACV 07-0667, 2009 WL 3178066, *3 (C.D. Cal. Sept. 29, 2009) (holding that "the economic loss rule" barred the plaintiff's tort claim because it "ar[ose] solely out of the[] [parties'] contract and commercial transaction" such that the defendant did not owe any

---

[4] Like under California law, Massachusetts law adheres to the economic loss doctrine and bars recovery under a negligence theory for purely economic loss. *See Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 46 (Mass. 2009) (The economic loss doctrine "bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss."); *In re TJX Companies Retail Sec. Breach Litig.*, 564 F.3d 489, 498 (1st Cir. 2009) (applying Massachusetts law) (applying economic loss doctrine and barring negligence claim because there was no cognizable property damage).

independent duty); *Cusano v. Klein*, 280 F.Supp.2d 1035, 1043 (C.D. Cal. 2003) (dismissing a tort claim brought by a member of the band "KISS" for royalties due under a contract with the band because plaintiff's right to royalties are based in contract and the tort claim was "predicated on a mere breach of contract").

With respect to Aegis' gross negligence claim in Count II, "California does not recognize a distinct common law cause of action for gross negligence apart from negligence…." *Jimenez v. 24 Hour Fitness USA, Inc.*, 237 Cal.App.4th 546, 552 (Cal. Ct. App. 2015); *Cont'l Ins. Co. v. Am. Prot. Indus.*, 197 Cal.App.3d 322, 328-30 (Cal. Ct. App. 1987) ("California does not recognize a distinct common law cause of action for gross negligence apart from negligence."); *see also Grappo v. McMills*, 11 Cal.App.5th 996, 1014-15 (Cal. Ct. App. 2017). At most, gross negligence may constitute "a degree" of negligence, which requires a plaintiff to demonstrate the four elements of negligence (duty, breach of duty, causation, and injury) plus "extreme conduct" by the defendant. *Rosencrans v. Dover Images, Ltd.*, 192 Cal.App.4th 1072, 1082 (Cal. Ct. App. 2011).

Assuming *arguendo* that Count II is simply an additional attempt to assert a degree of negligence, Aegis still fails to state a viable claim. Aegis asserts that UKG was grossly negligent because it owed Aegis a duty to avoid service disruptions, and was "responsible for providing continuous and ongoing timekeeping services" so that Aegis could make "timely wage payments to employees," in accordance with applicable wage and hour laws. (Compl. ¶ 90.) Importantly, California law prohibits Aegis from attempting to create a tort duty of care on the part of UKG, a payroll and timekeeping services provider, with respect to Aegis' statutory wage and hour obligations. *See Goonewardene v. ADP, LLC*, 6 Cal.5th 817, 841 (Cal. 2019) ("[I]t is not appropriate to impose upon a payroll company a tort duty of care to an employee with respect to the obligations imposed by the applicable labor statutes and wage orders."); *Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1033 (9th Cir. 2019) (after applying *Goonewardene*, the court held that the plaintiff failed to establish that the defendant owed a duty); *Mattei v. Corp. Mgmt. Sols., Inc.*, 52 Cal. App. 5th 116, 121, fn. 5 (Cal. Ct. App. 2020) (applies *Goonewardene* for the proposition that "independent payroll services company not liable to employees of client on claims of third party contract beneficiary, negligence and negligent misrepresentation"). At its heart, Aegis' gross negligence claim attempts to transport its duties to UKG

in a manner prohibited by *Goonewardene* and not permitted under the parties' agreed upon indemnification clause. Additionally, The WFC Agreement contains the parties' obligations and remedies, and does not create any duty to avoid service disruptions. As stated above, the WFC Agreement specifically acknowledges that service outages can occur, and assumes, via the Service Level Agreement, that services may be disrupted, warranting customer credits. *See, supra*, p. 7.

Finally, gross negligence cannot exist unless Aegis asserts conduct that rises "to the level of either a 'want of even scant care' or 'an extreme departure from the ordinary standard of conduct.'" *Id*. (quoting *City of Santa Barbara v. Super. Ct.*, 41 Cal.4th 747, 754 (Cal. 2007)).[5] Aegis' allegations of "gross" negligence essentially boil down to an assertion that UKG was "grossly negligent" because it did not prevent a criminal cybersecurity incident. According to Aegis, UKG should have known an attack was foreseeable because "other payroll companies had suffered such attacks," and because of "warnings" from unidentified "industry experts," none of which are alleged to have been within UKG's knowledge. (Compl. ¶ 85.) Allegations that a defendant failed to guard against or warn of a potentially dangerous condition do not meet the standard for "gross negligence." *Anderson v. Fitness Internat., LLC*, 4 Cal.App.5th 867, 881 (Cal. Ct. App. 2016) ("a failure to guard against, or warn of, a dangerous condition typically does not rise to the level of gross negligence). And in any event, Aegis elsewhere acknowledges that UKG promptly notified it of the ransomware incident, kept them informed of the status of the KPC outage repair efforts, and at least partially restored employee payroll access by January 19, 2022. (Compl. ¶¶ 27-28). These allegations eviscerate any claims of gross negligence asserted by Aegis.

## B.   Aegis Cannot Maintain an Unfair Competition Law Claim

Aegis also has not pled a viable claim under California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (the "UCL" claim). Standing is a prerequisite to any claim. To have standing to bring a UCL claim, Aegis has to plead an "injury in fact" that it has "lost money or property" because of UKG's actions. *See* Cal. Bus. & Prof. Code, § 17204*; Hall v. Time Inc.*, 158 Cal.App.4th 847, 854-55 (Cal. Ct. App. 2008) (a pecuniary injury is necessary); *In re Tobacco II*

---

[5] Massachusetts law also requires heightened allegations for gross negligence. *See Aleo v. SLB Toys USA, Inc.*, 466 Mass. 398, 410 (Mass. 2013) (the "long-standing definition of gross negligence" includes "very great negligence, or the absence of slight diligence, or the want of even scant care")

*Cases*, 46 Cal.4th 298, 328 (Cal. Ct. App. 2009) (an immediate causation is necessary). Here, Aegis has not pled any injury in fact. Rather, it again posits summary assertions that it was injured "substantially" by purported UKG website representations, which even if they were made, are expressly superseded by the WFC Agreement, and cannot form the basis of UCL claims here. (Compl., Ex. A, § 17.9, "GENERAL", at 12.) And further, Aegis cannot base the "money or property damage" element of its UCL claim on attorneys' fees, as it seeks to do here (Compl. ¶ 97), because attorneys' fees are not a recoverable monetary or property damage under the UCL. *See, e.g., Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal.4th 163, 175 (Cal. 2003).

UCL claims also cannot be maintained when, as here, a plaintiff asserts a breach of contract claim. *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203 (N.D. Cal. 2017) (UCL claims are barred when a breach of contract claim that would provide an adequate remedy at law is also asserted); *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020); *see also Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2018 WL 510139, at *2, *4 (N.D. Cal. Jan. 23, 2018) (dismissing the UCL claims because the plaintiff failed to demonstrate that she lacked an adequate legal remedy, especially given that she had an available legal remedy under her CLRA claim); *Zapata Fonseca v. Goya Foods Inc.*, No. 16-cv-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing the UCL claims because the plaintiff pled other claims, including negligent misrepresentation that provide for an adequate remedy at law).

Finally, Aegis' purported UCL claims have nothing to do with unfair competition, which is the purpose and focus of the UCL. *See SC Licensing, LLC v. 5 Horizons Grp., LLC*, No. CV 17-7542, 2018 WL 5099293, at *4 (C.D. Cal., April 12, 2018) (dismissing UCL claim on ground that "[t]he legislature enacted the UCL not to protect competitors and consumers from mere contract breaches, but to protect them from unfair competition.") In order for a claim to be actionable under the UCL, the unfair act must either amount to an antitrust violation, violated the policy or spirit of the antitrust laws, or significantly harm competition. *Id.* (citing *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 187 (Cal. 1999)). In *SC Licensing*, there was no valid UCL claim because the alleged unfair act was simply a breach of an exclusivity agreement. *Id.*

None of the allegations in Count III involve protecting Aegis from unfair competition. *See, e.g., Aadventure Products, Inc. v. Simply Smashing, Inc.*, 2007 WL 2775128 (S.D. Cal. 2007) (holding that plaintiff's UCL cause of action "state[d] a claim because … [p]laintiff ha[d] sufficiently pled trade dress infringement and false advertising"); *Sisemore v. Master Financial, Inc.*, 151 Cal. App. 4th 1386, 1426 (Cal. Ct. App. 2007) ("Since we have concluded that [plaintiff] has stated viable claims under the Unruh Act … it necessarily follows that she has alleged sufficient facts to support a cause of action under the UCL"); *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1098 (N.D. Cal. 2007) (where plaintiffs successfully pled violations of the CLRA by breaching its duty to disclose information about its defective speedometers, court held that "when taking all of plaintiffs' allegations as true, GM has committed an unlawful practice under the UCL"). Rather, these allegations are an attempt to assert extra-contractual claims that do not constitute unlawful competitive conduct of the nature the UCL was enacted to prevent. *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("[A] common law violation such as breach of contract is insufficient [to amount to a violation of the 'unlawful' prong of Cal. Bus. & Prof. Code § 17200 *et seq.*]."). Aegis' failure to point to any statutory, regulatory, or other legal violation dooms its UCL claim.

## C.    Aegis Fails to State a Claim for Equitable Indemnity

Aegis' equitable indemnity claim (Count IV) is meritless because the WFC Agreement expressly defines - and limits – the Parties' indemnification rights and duties. *See Maryland Cas. Co. v. Bailey & Sons, Inc.*, 35 Cal.App.4th 856, 873 (Cal. Ct. App. 1995) (quoting *Rossmoor Sanitation, Inc. v. Pylon, Inc.* 13 Cal.3d 622, 628 (Cal. 1975) ["Where parties expressly contract with respect to the duty to indemnify, 'the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity.'"].) Under both California and Massachusetts law, indemnification is controlled by the parties' contract. *See E.L. White, Inc. v. Huntington Beach*, 21 Cal.3d 497 (Cal. 1978) ("[W]hen parties by express contractual provision establish a duty in one party to indemnify another, the extent of that duty must be determined from the contract."); *Speers v. H.P. Hood, Inc.*, 22 Mass.App.Ct. 598, 600 (Mass. App. Ct. 1986) ("[A]n indemnity provision is . . . to be interpreted like any ordinary contract. . . ." (footnote omitted)). If the agreement is unambiguous, the

1    Court must interpret it in accordance with its ordinary and plain meaning. *Citation Ins. Co. v. Gomez*,

2    426 Mass. 379, 381 (Mass. 1998).

3           By its plain and unambiguous terms, the WFC Agreement limits UKG's indemnification

4    obligation    to    intellectual    property    infringement    claims.    (Compl.    Ex.    A,    §    13,

5    "INDEMINIFICATION", at 9-10.) The WFC Agreement's clear indemnity language provides no

6    space for Aegis to claim an entitlement to indemnification for its employees' wage and hour claims

7    (See, Compl. ¶¶ 101-102), particularly when those claims pre-date not only the UKG ransomware

8    attack, but also pre-date the Parties' contractual agreements, as they stretch back as far as May 30,

9    2017. (*See*, RJN, Greving Decl., Ex. G ¶ 20.)

10          Additionally, there is no reason to believe that UKG, which Aegis characterizes as a large,

11   sophisticated company (Compl. ¶¶ 17, 19), would agree to take on indemnification of California

12   employees' wage and hour claims in its July 2019 WFC Agreement with Aegis. As of February 2019,

13   California case law prohibited employees from pursuing wage and hour claims directly against their

14   employer's payroll service provider, because no duty of care was owed. *Goonewardene*, 6 Cal.5th

15   817. Since then, the Ninth Circuit has further held that there is no private right of action at common

16   law or under the Fair Labor Standards Act ("FLSA") for contribution or indemnification of employee

17   wage claims, even where a joint employment relationship exists. *Scalia v. Employer Solutions Staffing*

18   *Group, LLC*, 951 F.3d 1097 (9th Cir. Mar. 2, 2020); *see also*, Cal. Lab. Code § 2810.3 (providing for

19   shared liability only for employers and staffing agencies). Here, UKG is merely a third-party vendor

20   – who, unlike a joint employer cannot be held joint and severally liable under the FLSA – distancing

21   it even further from the common-law equitable indemnification claim Aegis purports to assert.

22          Aegis also freely and voluntarily consented to the inclusion of limitation of liability provisions

23   in the WFC Agreement, and in such a situation, liability limitations are routinely enforced. *See, e.g.*,

24   *KST Data, Inc. v. DXC Tech.*, No. CV 17-07927, 2018 WL 5733515, at *5 (C.D. Cal., Apr. 30, 2018)

25   (granting motion to dismiss based on application of "unambiguous" limitation on liability clause);

26   *Lewis v. YouTube, LLC*, 244 Cal.App.4th 118, 125-26 (Cal. Ct. App. 2015) (affirming trial court order

27   sustaining demurrer to breach of contract claim based on absence of damages element where limitation

28

of liability clause excluded recovery of sought-after direct, incidental, special, punitive, or consequential damages).

Parties to a private agreement may allocate risks and limit liability in any manner they choose. Therefore, parties to a contract are generally free to limit their remedies and damages for breach of contract. *See Artukovich v. Pacific States Cast Iron Pipe Co.*, 78 Cal.App.2d 1, 4-5 (Cal. Ct. App. 1947) (upholding an express contract provision that limited damages for a breach and disclaimed any consequential damages); *Markborough Cal., Inc. v. Super. Ct.*, 227 Cal.App.3d 705, 714 (Cal. Ct. App. 1991) ("[W]here parties agree to a limitation of damages provision, courts should not alter the bargained-for risk allocation unless a breach of contract is so fundamental that it causes a loss which is not part of that allocation."); *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 547 (9th Cir. 1985) (citations omitted.)

The WFC Agreement contains strong limitations on liability in UKG's favor. Sections 14.2 and 14.3 of the WFC Agreement's "Terms and Conditions" limit UKG's exposure to direct damages only, and expressly disclaim any consequential damages, with the only carve out made for intellectual property indemnification obligations as to which there are none applicable to the claims in the Complaint. Aegis seeks entirely incidental, punitive, consequential or indirect damages, all of which are expressly excluded by WFC Agreement's terms. (Compare Compl. ¶ 77, Prayer for Relief at (a), with Compl., Ex. A, "Terms and Conditions" at 10.) In addition, Section 14.4 of the WFC Agreement also applies to specifically exclude UKG's liability for a data security breach resulting from any "externally introduced harmful program." (Compl, Ex. A, "Terms and Conditions" at 11.) As Aegis alleges, the service outage and resulting harms it purportedly sustained were the result of the ransomware attack. (Compl. ¶¶ 3-9 ["UKG was subject to a ransomware attack on its timekeeping system," "exposing workers' information to cybercriminals" and which caused "UKG's payroll systems [to go] offline."].) However, that chain of events is precisely the "externally introduced harmful program" that is contemplated by, and expressly disclaimed under, Section 14.4. (Id.)

### D.    Aegis' Breach of Contract Claim Likewise Fails.

In Count V Aegis alleges that UKG breached the contract in two ways: (1) by failing to provide the Workforce Central Software for approximately 5 weeks, and (2) by failing to provide adequate

safeguards to protect consumer data and therefore allowing a data security breach. (Compl. ¶ 107.) While Section 12 of the WFC Agreement states that UKG shall provide administrative, physical, and technical safeguards to protect Aegis' data as outlined on a webpage link, the contract does not guarantee that Aegis' access to Kronos would be perpetually uninterrupted. (Compl., Ex. A, § 12, "DATA SECURITY" at 9.) To the contrary, the WFC Agreement expressly indicates that UKG's services are not guaranteed to be uninterrupted or free from outages. (Compl., Ex. A, § 11.) Aegis cannot assert a breach of contract claim based on extra-contractual guidelines and suggestions. *Bevis v. Terrace View Partners, LP*, 33 Cal.App.5th 230, 260 (Cal. Ct. App. 2019) (a contracting party's performance of a contract in accordance with its express terms or the law cannot constitute a breach of the contract); *Levy v. State Farm Mut. Automobile Ins. Co.*, 150 Cal.App.4th 1, 5 (Cal. Ct. App. 2007) (sustaining demurrer to breach of contract claim because "Plaintiffs have not alleged [Defendant] breached any terms of its insurance policy"; in other words, a claim for breach of contract requires breach of an agreed-upon contractual provision).[6] For Aegis to survive a motion to dismiss, UKG must have failed to provide safeguards that are specifically enumerated in the WFC Agreement. Aegis, however, contends that UKG failed to implement safeguards that are clearly not contained in the WFC Agreement, but instead are purported general guidelines or recommendations. (Compl. ¶¶ 36-37, 40, 43-44.) To compound matters, Aegis contends that UKG has failed to implement the purported, non-statutory "recommendations" only "on information and belief," without further explanation or basis. (Compl. ¶¶ 36-37, 40, 43-44.) These speculative allegations do not satisfy Rule 12(b)(6) pleading standards. *See Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-CV-05784-JST, 2020 WL 7392909, at *5 (N.D. Cal. July 23, 2020).

Aegis' alleged breach of contract damages are solely attributable to its own failure to comply with state and federal law following the KPC outage. (*See*, Compl. ¶ 9 ("[a]s a result of UKG's payroll

---

[6] The result would be the same under Massachusetts law. *Vacca v. Brigham & Women's Hosp., Inc.*, 98 Mass.App.Ct. 463, 469 (Mass. App. Ct. 2020) (affirmed the trial court's dismissal of the breach of contract claim because the plaintiff could not show a breach to "any express term" of the contract); *Parker v. Bank of Am., NA*, No. CIV.A. 11-1838, 2011 WL 6413615, at *4 (Mass. Super. Dec. 16, 2011) (dismissed the breach of contract claim alleging that defendant's contractual duties required it to comply with "federal HAMP guidelines", which did not exist at the time of contract formation); *Somerset Sav. Bank v. Chicago Title Ins. Co.*, 420 Mass. 422, 430 (Mass. Super. 1995) (dismissed the breach of contract claim because the alleged contractual obligation lacked a basis in an express term).

services going offline, it became very difficult for [Aegis] to correctly calculate and pay its employees, resulting in disruption of and harm to Aegis' business and other damages").) Despite manifold remedies sought by Aegis in the form of consequential, nominal, statutory, and treble damages, the WFC Agreement actually forecloses these type of damages. The WFC Agreement clearly and unambiguously provides for a singular remedy in the event of a service outage akin to that experienced by Aegis as a result of the ransomware attack - service level credits. (Compl., Ex. A, "Service Level Agreement", at 13-14.)

If there were any thought that, despite Section 10's "sole and exclusive remedy" language, Service Level Credits were just one of various remedies available to Aegis in the event of an outage, Section 14.1 of the Contract unequivocally shuts the door on any such notion: "EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, KRONOS AND ITS SUPPLIERS WILL NOT BE LIABLE FOR ANY DAMAGES OR INJURIES CAUSED BY THE USE OF THE SERVICES OR BY ANY ERRORS, DELAYS, INTERRUPTIONS IN TRANSMISSION, OR FAILURES OF THE SERVICES." (Complaint, Ex. A, "Terms and Conditions" at 10.) Aegis cannot now seek new and different remedies than what the parties expressly agreed to in the WFC Agreement as the allocation of risk between them, including the risks inherent in cloud software services, in the context of the commercial and other terms of their agreement.

Aegis' breach of contract claims are all designed to remedy the purported downstream effects of the KPC service outage. Thus, Aegis' claims are contrary to, and legally precluded by, these contractual provisions. This lawsuit does not pray for any Service Level Credits, so Aegis has no actionable claim for damages in this case because the Complaint discloses a complete defense to all claims and relief sought. Where, as here, a plaintiff includes complaint allegations that are contradicted by contract provisions incorporated into the complaint, dismissal is warranted under Rule 12(b). *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052, n. 1 (9th Cir. 2023) (when a general conclusion in a complaint contradicts specific facts retold in a document attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice, those specific facts are controlling on a motion to dismiss for failure to state a claim); *Van Hook v. Curry*, No. C 06-3148, 2009 WL 773361, at *3 (N.D. Cal. Mar. 23, 2009) (granting a motion to dismiss where the allegations were contradicted by a

written instrument incorporated into the complaint); *Frantz v. Blackwell*, 189 Cal.App.3d 91, 94 (Cal. Ct. App. 1987) ("evidentiary facts found in recitals of exhibits attached to a complaint or superseded complaint…can be considered on demurrer"); *Catholic League for Religious and Civil Rights v. City and County of San Francisco*, 464 F.Supp.2d 938, 941 (N.D. Cal. Nov. 30, 2006) ("Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion"). *See also Pink Dot, Inc. v. Teleport Commc'ns Grp.*, 89 Cal. App. 4th 407, 419 (2001) (affirmed the dismissal of the breach of contract claim because the sole and exclusive remedy was to receive credits for the service interruption); *CareOne Mgmt., LLC v. Navisite, Inc.*, No. 1484CV00378BLS2, 2017 WL 2803060, at *7 (Mass. Super. Apr. 25, 2017) (dismissed the plaintiff's breach of contract claim because the service agreement limited liability to credits against plaintiff's monthly service charges)

To the extent Aegis contends that its breach of contract claims emanating from the WFC Agreement can be cured through amendments to the pleadings, Aegis' plea should fall on deaf ears. Dismissal without leave to amend is proper where a party prays for damages that are expressly disallowed by the subject contract. *New England Country Foods, LLC v. Vanlaw Food Prod., Inc.*, No. SACV2101060, 2022 WL 266050 (C.D. Cal. Jan. 20, 2022), is instructive. In *Vanlaw*, the Court dismissed plaintiff's claims, without leave to amend, that were facially barred by a limitation on liability provision stating that "in no event will either party be liable for any loss of profits, loss of business, interruption of business, or for any indirect, special, incidental or consequential damages of any kind." 2022 WL 266050 at *2. That provision is materially similar to the instant exclusion of all incidental, special, punitive, consequential or other indirect damages or for any lost or imputed profits under Section 14.3 of the Terms and Conditions in the WFC Agreement. Accordingly, Aegis will be necessarily precluded from circumventing the stinging legal import of the WFC Agreement's limitation of liability provision even if given a "second bite at the apple."

### E.   Aegis' Good Faith and Fair Dealing Claims Must Be Dismissed

Count VI's claim for breach of an implied covenant of good faith and fair dealing also should be dismissed. Claims for breach an implied covenant which do nothing more than allege the same

contract breach based on the same purported actions by the defendant and seeking the same damages, are superfluous. *Careau & Co. v. Security Pacific Business Credit, Inc.* 222 Cal.App.3d 1371, 1395 (Cal. Ct. App. 1990). *See Avidity Partners, LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1184 (2013) ("The covenant of good faith and fair dealing does not operate to supply a term that the express contract does not otherwise contain."); *Prager University v. Google LLC*, 85 Cal.App.6th 1022, 1039 (Cal. Ct. App. 2022). Because Aegis' breach of covenant of good faith and fair dealing claim relies upon the same facts, actions, and legal theories as its previously-pled breach of contract claim (Count V), it is likewise superfluous and must be dismissed.[7]

## V.    CONCLUSION

For the foregoing reasons, UKG respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice, and without leave to amend.

Respectfully submitted,

Dated:  April 17, 2023                COZEN O'CONNOR


By:     */s/ Melissa A. Siebert*
        Melissa A. Siebert (*Admitted Pro Hac Vice*)
        Attorneys for Defendant UKG, Inc.

        Brett Greving (SBN 270883)
        COZEN O'CONNOR
        101 Montgomery Street, Suite 1400
        San Francisco, CA 94104
        Telephone: 415.644.0914
        Facsimile: 415.644.0978

---

[7] The same result follows under Massachusetts law, under which the covenant of good faith and fair dealing is implied in every contract and where there is no breach of the underlying contract, there can be no breach of the covenant of good faith and fair dealing. *See Weiler v. PortfolioScope, Inc.,* 469 Mass. 75, 82 (Mass. 2014); *Cordoba v. Ricciardelli*, 2003 WL 831760, at *6 (Mass. Super. Mar. 6, 2003) ("[B]ecause there was no breach of the underlying Agreement, there was no breach of the implied covenant of good faith and fair dealing.").

24