UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AEGIS SENIOR COMMUNITIES LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>UKG INC.,<br><br>    Defendant. | Case No. 23-cv-01076-AMO<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 60 |

Defendant UKG, Inc.'s ("UKG") motion to dismiss and motion to strike were heard before this Court on July 18, 2024. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** UKG's motion to dismiss, for the following reasons.

**I. BACKGROUND**

    **A. Factual Background[1]**

Plaintiff Aegis is an assisted living and memory care provider that provides care to seniors in California, Nevada, and Washington. First Amended Compl. (ECF 57, "FAC") ¶ 7. Defendant UKG, through its subsidiary Kronos Incorporated ("Kronos") provides human capital and workforce software solutions to companies such as Aegis, which those companies then use to manage employee timekeeping and support their own payroll. FAC ¶¶ 61, 63.

---

[1] The Court accepts factual allegations in the complaint as true, *Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 722 (9th Cir. 2024), and "construe[s] the pleadings in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### 1. The 2019 and 2021 WFC Agreements

In July 2019, Aegis and Kronos entered into a contract called the "WFC Agreement," whereby Aegis purchased Kronos' Workforce Central Software hosted in the Kronos Private Cloud ("KPC") to administer and manage its employees' timekeeping. FAC ¶¶ 26, 61, and Ex. A. The WFC Agreement provides that "[w]hen using and applying the information generated by the [timekeeping software] Services [Aegis] is responsible for ensuring that [it] complies with applicable laws and regulations." FAC, Ex. A, § 4.5. The WFC Agreement grants Aegis limited rights of use to the stated services and applications provided by UKG via licenses and payments. FAC, Ex. A, § 4.1.

WFC Agreement expressly contemplates service outages and notes in all-caps: "THE [KRONOS] SERVICES ARE NOT GUARANTEED TO BE ERROR-FREE OR UNINTERRUPTED." FAC, Ex. A § 11.3. Further, in the WFC Agreement, the parties set forth service credits as the sole and exclusive remedy for service outages, waived indirect and consequential damages, and limited the scope of indemnification that Kronos could be responsible for. FAC, Ex. A §§ 10, 13.1, 14.3.

In December 2021, over two years into the WFC Agreement, the KPC was targeted in a criminal ransomware attack, which caused a temporary outage in KPC services, including those provided to Aegis. FAC ¶¶ 27, 78. The data breach resulted in the loss of all timekeeping and payroll services for almost six weeks. FAC ¶ 1. The December 2021 service outage led to Aegis's failure to pay employees correctly, a failure that led to two wage and hour class actions brought against it. FAC ¶¶ 11-12, 90, 93; *Salonga v. Aegis Senior Communities*, Case No.: 3:22-cv-525-LB; *Melgoza v. Aegis Senior Communities, LLC*, No. 3:22-cv-1756-LB.

In 2022, following the 2021 service outage, Aegis entered into another contract with UKG for the same services. FAC ¶¶ 100-01.

### B. Procedural History

This case was originally filed on March 9, 2023. The Court granted UKG's motion to dismiss during the hearing on that motion on November 2, 2023, permitting Aegis to clarify its theories of liability in an amended pleading. ECF 43.

In the First Amended Complaint, Aegis presents the following causes of action:

(1) Gross Negligence,

(2) Fraudulent Misrepresentation,

(3) Negligent Misrepresentation, and

(4) Violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.

*See* FAC (ECF 57).

**II.    DISCUSSION**

UKG moves to dismiss the FAC in its entirety under Rule 12(b)(6).  Alternatively, UKG moves to strike impermissible allegations under Rule 12(f).  Because the Court finds dismissal appropriate, it does not reach the motion to strike.

**A.    Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

1   Review is generally limited to the contents of the complaint, although the court can also
2 consider a document on which the complaint relies if the document is central to the claims asserted
3 in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*,
4 504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of
5 judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*,
6 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider documents referenced extensively in
7 the complaint and documents that form the basis of the plaintiffs' claims. *See No. 84 Emp'r-*
8 *Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir.
9 2003).

10   If dismissal is warranted, it is generally without prejudice, unless it is clear that the
11 complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir.
12 2005). "Leave to amend may also be denied for repeated failure to cure deficiencies by previous
13 amendment." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

**B.     Analysis**

The Court takes up the sufficiency of Aegis's claims in turn, first discussing whether its claim for gross negligence can stand in light of the economic loss doctrine, then turning to whether Aegis sufficiently alleges a misrepresentation that could support either of its claims for fraudulent misrepresentation or negligent misrepresentation, and then discussing Aegis's UCL claim. The Court finally considers whether Aegis should be granted further leave to amend.

**1.     Gross Negligence**

Aegis alleges that UKG was grossly negligent by failing to prevent or appropriately respond to the ransomware attack. To state a claim for negligence, Aegis must allege (1) a cognizable duty owed to it, (2) a breach of that duty by UKG, (3) causation, i.e., that the breach directly caused Aegis injury, and (4) injury or damages. *See Vasilenko v. Grace Family Church*, 3 Cal. 5th 1077, 2083 (2017). In California, a claim for gross negligence is distinct from traditional negligence only by degree – to state a claim for gross negligence all that is required are these same four elements for negligence, plus an allegation of extreme conduct by UKG. *See Rosencrans v. Dover Images, Ltd.*, 192 Cal. App. 4th 1072, 1082 (2011).

4

### a. Economic Loss Rule

UKG argues that, even assuming Aegis can state a claim for gross negligence, any recovery is barred by California's economic loss rule. The California Supreme Court describes, "In general, there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage. . . [T]he rule functions to bar claims in negligence for pure economic losses in deference to a contract between litigating parties." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022) (citation omitted). "Not all tort claims for monetary losses between contractual parties are barred by the economic loss rule. But such claims are barred when they arise from – or are not independent of – the parties' underlying contracts." *Sheen*, 12 Cal. 5th at 923. California courts reason that "the economic loss rule prevents the law of contract and the law of tort from dissolving into one another" and "requires a [plaintiff] to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (brackets and internal quotation marks omitted); *see also J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979) (describing the economic loss rule). "If every negligent breach of a contract gives rise to tort damages, the [economic loss rule] would be meaningless, as would the statutory distinction between tort and contract remedies." *Robinson Helicopter Co., Inc.*, 34 Cal. 4th at 990. The rule applies when "the parties are in contractual privity and the plaintiff's claim arises from the contract (in other words, the claim is not independent of the contract)." *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 535 (2022) (citing *Sheen*, 12 Cal. 5th at 923). And the rule is particularly strong when a party alleges "commercial activities that negligently or inadvertently [went] awry." *Robinson Helicopter*, 34 Cal.4th at 991. Significantly, the economic loss rule applies to claims of negligence and gross negligence with equal force given that "California does not recognize a distinct common law cause of action for gross negligence apart from negligence." *Jimenez v. 24 Hour Fitness USA, Inc.*, 237 Cal. App. 4th 546, 552 (2015); *see also Whitesides v. E*TRADE Sec., LLC*, No. 20-CV-05803-JSC, 2021 WL 930794, at *4 (N.D. Cal. Mar. 11, 2021).

Here, the Court finds that Aegis's claim for gross negligence "arises from, and is not independent of," the parties' Agreements. *Sheen*, 12 Cal. 5th at 923. At its heart, Aegis' claim is premised on a supposed duty of care arising from the WFC contract. *See* FAC ¶ 129 ("The contract between Plaintiff and UKG for UKG to perform certain services gave rise to a duty of care which required that such services be performed in a competent and reasonable manner."). Aegis' purported gross negligence claim, for which Aegis seeks purely economic recovery, is necessarily intertwined with the underlying WFC Agreement, and thus is barred by the economic loss doctrine. The sole source of Aegis's alleged harm is the service outage. The parties foresaw this possibility and included a provision in the WFC Agreement specifically delineating the recoverable damages for an outage: service credits. *See* FAC, Ex. A § 10. This was the allocation of risk negotiated by the parties and on which their economic bargain was based. Therefore, the economic loss rule presumptively bars Aegis's claim for gross negligence.

### b. Exception to Economic Loss Rule

Aegis argues that certain exceptions apply to circumvent the application of the economic loss rule.[2] California's economic loss rule has two broad categories of exceptions that may permit a tort claim to advance despite the existence of a contract. *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1181 (C.D. Cal. 2009). The first category applies to product liability cases, which is inapplicable in the present case. *Id.* The second category applies to breaches of a noncontractual duty, for example, where the conduct also (1) breaches the duty imposed by some types of "special" relationships; (2) breaches a "duty" not to commit certain intentional torts; or (3) was committed "intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages." *Robinson Helicopter*, 34 Cal. 4th at 990.

---

[2] Confusingly, counsel for Aegis argued at the hearing that, by alleging gross negligence, Aegis is able to evade limitations imposed by the Agreement, but that the substance of the duty Aegis seeks to impose originates from UKG's responsibility as a provider of professional services. This conflation of different theories of liability weakens Aegis's argument that it may evade application of the economic loss rule.

6

Arguing this latter exception to the economic loss rule applies, Aegis cites to *Sheen*, in which the California Supreme Court identified certain contracts for professional services as exempted from the rule. *Sheen*, 12 Cal. 5th at 933. The court held that tort claims may proceed despite contractual privity between the parties because "professionals generally agree to provide careful efforts in rendering contracted-for services, but most clients do not know enough to protect themselves by inspecting the professional's work or by other independent means. Given this disparity, a claim for professional negligence can serve the important purpose of ensuring that professionals render the 'careful efforts' they have contracted to provide." *Id.* at 933. Aegis avers that it contracted with UKG as a professional servicer of technical safeguards and data security.

Aegis's argument fails on several bases. First, though the *Sheen* Court acknowledged the exception adduced by Aegis, it denied its application in that case and discussed the limited applicability of the professional services exception. *Sheen*, 12 Cal. 5th at 932-33. Second, Aegis ignores the *Sheen* Court's extensive admonishment to lower courts regarding the importance of applying contract law to avoid unnecessary and confusing imposition of tort responsibility. *See id.* at 934. Third, the *Sheen* Court emphasized that the economic loss doctrine will apply, and no tort duty can be imposed, where a tort claim seeks to impose obligations not negotiated in the parties' contract or which would result in "dictat[ing] terms that are *contrary* to the parties' allocation of rights and responsibilities." *Id.* at 925 (emphasis in original).

This final point provides an important distinction because Aegis seeks to impose additional obligations on UKG that reach far beyond the negotiated standards. For example, all of UKG's purported data security and business continuity obligations are defined in the Agreement, not through the voluntary standards and recommendations regarding cybersecurity standards quoted by Aegis in an attempt to bolster its gross negligence claim. *See* FAC ¶¶ 35-49 (quoting advisements and standards from the Federal Bureau of Investigations, Federal Trade Commission, National Institute of Standards and Technology, and California Consumer Privacy Act). None of the voluntary standards identified in the FAC are included in the WFC Agreement. Rather, Aegis admits that the WFC Agreement, through the incorporated Cloud Guidelines, provides for "administrative, physical, and technical safeguards for protection of the security, confidentiality

7

and integrity of Customer data," attaching both the WFC Agreement and the Cloud Guidelines to the FAC. FAC ¶ 71; FAC Ex. A, § 12.1 at 9; FAC Ex. B. Aegis's attempt to impose additional standards on UKG, standards which were not bargained for even in the 2022 Agreement executed following the ransomware attack, is precluded by the economic loss rule because it would impose terms contrary to the allocation of the parties' rights and responsibilities.

Aegis additionally argues that UKG's status as a professional provider of payroll and IT services gives rise to an extra-contractual duty beyond the parties' contract. Opp. at 10 (ECF 64 at 17) (citing FAC ¶¶ 87, 129, 137). "To state a cause of action for professional negligence, a party must show '(1) the duty of the professional to use such skill, prudence and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) a causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional negligence.' " *Giacometti v. Aulla, LLC*, 187 Cal. App. 4th 1133, 1137 (2010) (quoting *Nichols v. Keller*, 15 Cal. App. 4th 1672, 1682 (1993)). In support of its argument that allegations of professional negligence may circumvent the economic loss rule, Aegis cites to *Music Grp. Macao Com. Offshore Ltd. v. Foote*, No. 14-CV-03078-JSC, 2015 WL 3882448 (N.D. Cal. June 23, 2015), a summary judgment order addressing claims brought by a corporation against its former Chief Technology Officer ("CTO") for his failures to undertake reasonable security measures to deal with the threat of cyber attacks. In *Music Group Macao*, the court denied the former CTO's bid for summary judgment based on a dispute of material fact regarding the existence of a potential professional duty for CTOs. *Id.* at *17. In contrast, here, UKG did not commit to such broad data security responsibilities, and Aegis expressly contracted for software as a service (FAC ¶ 26), not anything approximating professional services similar to physicians, lawyers, or auditors. Moreover, Aegis's reliance on *Music Group Macao* is misplaced because that court's ruling centered on the existence of a dispute of material fact, not the existence of a professional duty for those in a position of maintaining corporate data security. *Music Grp. Macao*, 2015 WL 3882448, at *17. Aegis fails to establish an exception to the economic loss rule.

//

//

### c. Gross Negligence Conclusion

At its heart, Aegis' gross negligence claim is premised on a supposed duty of care arising from the WFC contract (FAC ¶ 129) ("The contract between Plaintiff and UKG for UKG to perform certain services gave rise to a duty of care which required that such services be performed in a competent and reasonable manner."). The Court accordingly does not reach the parties' several other arguments regarding the gross negligence claim. Because Aegis fails to establish that it suffered harm beyond purely economic losses, particularly in light of the Agreement's contemplation and limitation of associated damages, the economic loss rule bars its claim for gross negligence. *See* FAC, Ex. A § 10 (establishing service credits as the exclusive remedy in case of a service outage); *see also* § 14.3. The Court **GRANTS** the motion to dismiss Aegis's claim for gross negligence.

### 2. Fraudulent Misrepresentation & Negligent Misrepresentation

To plead a claim for fraudulent misrepresentation, Aegis must establish: "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 605-06 (2014). Relatedly, to state a claim for negligent misrepresentation, a species of deceit, Aegis must establish (1) a misrepresentation; (2) justifiable reliance; and (3) resulting damage." *Borman v. Brown*, 59 Cal. App. 5th 1048, 1060-61 (2021); *see also Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1255, (2009).

Both claims for misrepresentation must also meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. Rule 9(b) requires pleading with particularity the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Under Rule 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 552 (N.D. Cal.

9

2019). The pleading must contain specific, particular facts "explaining why the statement was false when it was made." *Id.* at 559 (finding Apple's statement that it tests its products was not false merely because the product had a defect).

Aegis contends that UKG's statements are fraudulent because two years into the KPC Agreement, UKG was subject to a criminal ransomware attack. FAC ¶ 78-81. Aegis bases its claim for fraudulent misrepresentation on purported representations Aegis made at the time that the parties entered into the Agreement, including that UKG would: (i) provide payroll and IT services, (ii) would maintain SOC 2 and AICPA security standards,[3] and (iii) would replicate data and would restore data "in a commercially reasonable timeframe." FAC ¶¶ 147-53. Aegis alleges that the same representations additionally support its claim for negligent misrepresentation. FAC ¶¶ 167-69. These purported misrepresentations relate to the Agreement's terms, they are not independent of it. Accordingly, the economic loss rule discussed above applies to these tort claims as well. *See Robinson Helicopter Co.*, 34 Cal. 4th at 991. This warrants dismissal of both claims of misrepresentation.

But further, Aegis does not sufficiently plead a claim for either claim of misrepresentation. First, Aegis fails to specifically identify any fraudulent misrepresentations – Aegis relies only on vague references to marketing materials and unsupported deductions that UKG must have failed to meet promised safety standards because Aegis suffered the ransomware attack. *See* FAC ¶ 78-81. Aegis fails to plead what was false about any alleged representations made by UKG, instead simply concluding that they must have been false merely because a ransomware attack occurred. FAC ¶¶ 35, 36, 44, 45, 105. These allegations especially lack the particularity required by Rule 9(b).

Second, even if those allegations sufficiently described a misrepresentation, the claims must be dismissed as Aegis cannot allege its justifiable reliance on any such marketing statements in light of the parties' negotiated Agreements. The WFC Agreement contains an integration

---

[3] These acronyms refer to the American Institute of Certified Public Accountants ("AICPA") and AICPA's Trust Services Principles Section 100a, Trust Services for Security, Availability, Processing Integrity, Confidentiality and Privacy ("SOC 2"). *See* FAC ¶ 71.

clause that superseded "all prior or contemporaneous representations, negotiations, or other communications between the parties relating to the subject matter of this Agreement." FAC, Ex. A, § 17.9. That integration clause clearly displaces Aegis's claim that it was justified in relying upon earlier advertising statements. *See, e.g.*, *Microsoft Corp. v. Hon Hai Precision Indus. Co.*, No. 19-CV-01279-LHK, 2020 WL 5128629, at *13 (N.D. Cal. Aug. 31, 2020) (considering the existence of an integration clause in the court's assessment of whether justifiable reliance had been adequately pleaded). Indeed, Aegis's argument regarding UKG's misrepresentations ignores that the parties entered into Agreements that expressly considered service interruptions and Aegis's related remedies.

To the extent Aegis's misrepresentation claims relate to the 2022 Agreement, its claim of justifiable reliance is also defeated by its own pleading. Plaintiff claims reliance based on the Cloud Guidelines that appeared on UKG's website, but then "entered into a new contract with UKG for payroll services" eleven months after the cyberattack, on or about October 1, 2022. FAC ¶ 101. Aegis cannot establish justifiable reliance where it additionally claims that it knew the same security representations were false after the ransomware attack a year earlier. Moreover, Aegis's fraud claim arising out of the 2022 Agreement is based on "additional misrepresentations that UKG would provide certain services and commitments to data security . . . on its website and in marketing materials," but Aegis fails to attach, cite to, or state what those alleged representations were. These allegations lack the requisite particularity required by Rule 9(b). Further, Aegis could not reasonably rely upon its assumption that ransomware attacks and service outages would not occur given the contract it negotiated, which expressly considered those possibilities. UKG made no promises that were violated by the ransomware attack. *See* FAC, Ex. A § 11 ("The Services are not guaranteed to be error-free or uninterrupted.").

In sum, Aegis fails to identify any actionable misrepresentation, nor can it plausibly plead that its reliance on any misrepresentation was justifiable. The Court **GRANTS** UKG's motion to dismiss both the fraudulent misrepresentation and the negligent misrepresentation causes of action.

### 3. **Unfair Competition Law**

Finally, Aegis alleges that UKG engaged in unlawful, unfair, or fraudulent business acts under California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.

To have standing under the UCL, a plaintiff must have "suffered injury in fact" and "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. As the California Supreme Court has held, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis removed). "Remedies under the UCL are limited to restitution and injunctive relief, and do not include damages." *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1147 (C.D. Cal. 2021) (citation omitted); *see also Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761, 767 n.1 (2006) ("The UCL is equitable in nature and permits only limited forms of relief such as injunctions and restitution; compensatory damages are not available.") A plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

Though Aegis argues at length that it sufficiently pleads a UCL claim under each of the three prongs (unlawful, unfair, and fraudulent), the relief it seeks that euthanizes its claim. Aegis seeks recovery of fees and premiums it paid to UKG, but clearly refers to contractual payments under the WFC Agreement. FAC ¶ 187. UCL claims cannot be based on contract breaches and cannot seek contract damages. *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). Aegis seeks to claw money from UKG that it purportedly paid (or failed to pay) to others, including the "fees paid to defend itself from the class actions." FAC ¶ 187. But Aegis cannot attempt to recoup money it paid to third parties under the UCL. Moreover, Aegis fails to plead that it lacks an adequate remedy at law, nor could it given that it asserts multiple legal claims seeking monetary damages arising out of the same conduct. *Cf. Sonner*, 971 F.3d at 844.

Because Aegis cannot state a cognizable claim for relief under the UCL, the Court also **GRANTS** UKG's motion to dismiss this cause of action.

### 4. Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15(a), a court should grant leave to amend a complaint "when justice so requires," because "the purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc). The Court may deny leave to amend, however, for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court previously granted Aegis the opportunity to amend its complaint (ECF 43, ECF 57), but the amendments failed to remedy the defects. Additionally, Aegis may not proceed with several of its claims because of the economic loss rule. The Court finds further amendment would prove futile. Therefore, the Court declines to permit Aegis to amend further.

## III. CONCLUSION

For the foregoing reasons, including the applicability off the economic loss rule to bar Aegis's tort claims, the Court **GRANTS UKG's motion to dismiss WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: September 4, 2024

**A**RACELI **M**ARTÍNEZ-**O**LGUÍN
**United States District Judge**